

**SO ORDERED.**

**SIGNED this 16 day of April, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                                           CASE NO.

**DUBORIS JAMES PETERKIN**                                  08-06060-8-ATS
**ZALESTRA HARRIS PETERKIN**

       **DEBTORS**

**ORDER REGARDING MOTION FOR SANCTIONS**

The matter before the court is the debtors' motion for turnover order and to impose sanctions for violation of the automatic stay. A hearing took place in Raleigh, North Carolina on April 15, 2009.

Duboris James Peterkin and Zalestra Harris Peterkin filed a petition for relief under chapter 13 of the Bankruptcy Code on September 6, 2008. On or about July 15, 2008, the Peterkins purchased a 1994 Lexus ES300 from Good to Go Auto Sales, Inc. The vehicle was equipped with an "on time payment protection system," a device that was programmed to deactivate the vehicle's electrical system if a code is not entered after a prescribed period of time. Upon receipt of each monthly payment, the creditor was to provide the debtors with the code to keep the car operational until the next payment came due.

The debtors failed to make their first payment, but on August 27, 2008, they negotiated a partial payment and received a code for the payment protection system that kept the car operable through September 15.  The debtors filed an expedited chapter 13 petition on September 6, 2008, but did not list Good to Go on their creditor matrix, and Good to Go did not get notice.  On or about September 17, 2008, the payment protection system deactivated the vehicle's electrical system.  It is not clear when Good to Go was contacted about the disabled vehicle, but the parties agree that Good to Go was not notified of the bankruptcy until sometime in October.  The debtors contend that Good to Go repeatedly refused to give the debtors a code to reactivate their vehicle, and that Joyce Amerson of Good to Go stated that she would not give the debtors a code until she was directed to do so by the court.  Ms. Amerson testified that when the Peterkins demanded a code, she explained to them that she could not get a code until a payment was recorded into the accounting system, but that she offered to have the device removed if the Peterkins paid for the vehicle to be towed to Good to Go.  Ms. Amerson further testified that Mr. Peterkin refused to pay for the tow, and thus the device initially was not removed.

On December 11, 2008, the debtors filed a motion for turnover and motion for sanctions, requesting the court to direct Good to Go to provide a code to reactivate the vehicle.[1]  On December 16, 2008, Good to Go wrote to the debtors and authorized them to remove the system and return the equipment to the dealership. The debtors maintain that this was the first time Good to Go suggested that the device could be removed.  They further maintain that they did not know how to remove the device, and they did not feel that they should be required to hire a mechanic to remove the system.

---

[1] The debtors' chapter 13 plan provides for payment in full of Good to Go's claim, plus preconfirmation adequate protection payments.

Finally, on February 10, 2009, the Peterkins had the vehicle towed to Good to Go, and the system was removed from the vehicle.

Because the system has been removed, the Peterkins no longer seek a turnover order. However, they do maintain that Good to Go willfully violated the automatic stay by exercising control over property of the estate, and that they suffered damages as a result of not having use of the vehicle. They concede that Good to Go did not have notice of the bankruptcy until sometime in October, and that they could have taken action after December 16, 2008, to have the device removed; thus, they seek damages for loss of use from October through December 16. Mr. Peterkin testified that he and Mrs. Peterkin were required to share the use of their 2007 Ford Expedition, which uses premium gas and gets only 15 miles per gallon, while the Lexus uses regular gas and gets 20 miles per gallon. Because the Expedition typically was used only for family purposes and was instead used for his business travel during this period, the debtors incurred not only the cost of additional gas, but additional mileage on the Expedition. Mr. Peterkin also testified that he suffered from stress as a result of the situation.

Good to Go contends that this is a case of first impression, and it contends that going forward removal of such a payment protection system is the best course of action for a secured creditor when a bankruptcy is filed. However, it maintains that whether the debtors or secured creditor should pay for the removal is uncertain. The court agrees that removal of the system is the best course, and that creditors should provide debtors with an emergency code that activates the vehicle for some short

3

time to enable the debtors to deliver the vehicle to the creditor for removal.[2] The cost of removal should be borne by the creditor.

In this case, the debtors bear some responsibility for failing to diligently pursue removal of the device after the offer was made by Good to Go. However, Good to Go's refusal to provide an emergency code or otherwise enable the removal of the device was a willful violation of the automatic stay pursuant to § 362(a)(3). "The automatic stay serves a crucial function in any bankruptcy case and willful violations under § 362(h) [now (k)] are serious matters warranting the mandatory imposition of sanctions that Congress has proscribed." In re Brock Utilities & Grading, Inc., 185 B.R. 719, 720 (Bankr. E.D.N.C. 1995).

Good to Go's actions caused the debtors actual damages, including $100 to tow the vehicle to Good to Go to remove the payment protection system, and the additional expense of fuel for the Ford Expedition and lost time from work. The debtors have incurred attorney's fees of $1000 to bring this motion before the court. The court will award actual damages of $300, plus attorney's fees of $1,000.

**NO LATER THAN 10 DAYS FROM THE DATE OF THIS ORDER, GOOD TO GO AUTO SALES, INC. SHALL PAY $1000 IN ATTORNEY'S FEES TO LEVETTE H. HOPKINS, COUNSEL FOR THE DEBTORS, AT 4024 BARRETT DRIVE, SUITE 203, RALEIGH, NORTH CAROLINA 27609. NO LATER THAN 10 DAYS FROM THE DATE OF THIS ORDER, GOOD TO GO AUTO SALES, INC. SHALL PAY $300 IN DAMAGES**

---

[2] At the hearing it was explained that Ms. Amerson was not aware that a short-term, "emergency" code could be provided, but she has recently learned that such a code exists. At the time of the dispute with the debtors, she understood that a code could only be obtained if a payment was entered into the accounting system.

**TO THE DEBTORS, DUBORIS JAMES PETERKIN AND ZALESTRA HARRIS PETERKIN, AT PO BOX 657, MORRISVILLE, NORTH CAROLINA 27560.**

**SO ORDERED**.

**END OF DOCUMENT**